PETER CONSTANTINIDES, an Infant, by THEODOSIOS CONSTANTINIDES, His Guardian ad Litem, and THEODOSIOS CONSTANTINIDES, Respondents, *v.* MANHATTAN TRANSIT COMPANY, Appellant.

First Department, May 8, 1942.

[REDACTED]

*Harold V. Angevine* of counsel [*George A. Garvey*, attorney], for the appellant.

*Harry Fieldsteel* of counsel [*Moe Levine* with him on the brief; *George A. Turley*, attorney], for the respondents.

DORE, J.  Defendant appeals from a judgment entered on a jury's verdict (ten to two) in favor of the infant plaintiff (herein " plaintiff ")  for $4,500 and his father for $500, in actions to recover for personal injuries, medical expenses and loss of services.

Plaintiff claims he was struck by defendant's passenger bus while he was crossing West Forty-ninth street at a point about twenty feet west of Eighth avenue, New York city.  Plaintiff testified that on June 17, 1933, the time of the accident, he was about ten years of age and lived on the south side of West Forty-ninth street at No. 338; that he had been at the main entrance to Madison Square Garden on Eighth avenue and had started to go home for supper about six-thirty P. M.; that he was alone and never hitched on the back of vehicles; that at Forty-ninth street, a one-way street west-bound, he walked west on the north side-walk about two buildings and started to cross the roadway from the north or uptown sidewalk to the south or downtown sidewalk. He also said that he started to cross at a point twenty feet west of Eighth avenue.  Near the curb and while on the north side-walk of Forty-ninth street he looked towards Eighth avenue. He was not behind or near a parked car and his eyesight was good. It was daylight, he had an unobstructed view and saw no buses or other vehicles moving west in Forty-ninth street.  He then stepped off the curb of the north sidewalk, walked straight across the Forty-ninth street roadway from north to south, looking toward Eighth avenue, and had taken about seven steps when he caught a glimpse of something out of the corner of his eye on top of him and was struck and rendered unconscious.  He remembered nothing further until he awoke later in a hospital.

Scheurlein, defendant's bus driver, called as plaintiff's witness, testified that on June 17, 1933, about six-thirty P. M., he was operating a bus owned by defendant going in a westerly direction along

West Forty-ninth street between Eighth and Ninth avenues but that no accident happened there so far as he had knowledge. He did not see any boy walking or running across Forty-ninth street while the bus was traveling west between Eighth and Ninth avenues. He stopped his bus at Ninth avenue for traffic. At Tenth avenue he made another stop and a police officer spoke to him. On Forty-ninth street between Eighth and Ninth avenues he said cars were parked on both curbs but there was sufficient roadway for the bus with space on either side. At the time of the trial, Scheurlein was not employed by defendant.

On redirect-examination, over the objection of defendant's counsel, Scheurlein was compelled to testify concerning, (1) claimed conversations on the ferry with passengers in the bus subsequent to the accident on the return trip to New Jersey; (2) Scheurlein's return to New York city the following Monday, two days after the accident, to the detective squad office and talk there about an accident; and also (3) his subsequent visit to the hospital where plaintiff was confined.

Plaintiff also called George Fisher, who operated a tailor shop at 308 West Forty-ninth street on the downtown side, about seventy-five feet west from Eighth avenue. Fisher knew plaintiff's family for nineteen years; and had plaintiff's father as his regular customer. Fisher did not see the accident, but was standing in front of his shop when he heard an outcry, and looking toward Eighth avenue, whence it came, he saw a crowd lifting something in the middle of the roadway behind a bus and at the same time saw the bus going fast past his shop toward Ninth avenue driven, he said, by a bald-headed man. Fisher, who had been in court from the opening of the trial and had seen and heard the driver Scheurlein testify as plaintiff's witness, then purported positively to identify Scheurlein as the bald-headed man he saw driving the bus. At the time of the trial Scheurlein was somewhat bald, but, recalled by defendant, he produced pictures, one taken in 1933 and another at his wedding in 1936, showing he had at such times a very good head of hair.

Four disinterested witnesses, passengers on the bus, called by defendant, testified that they did not see and had no knowledge that the bus struck any person while it was proceeding west on Forty-ninth street between Eighth and Ninth avenues. On June 17, 1933, defendant's passenger bus was chartered by the graduating class of a Passaic public school for a class day trip to New York city and return. Twenty-three pupils, mostly girls of thirteen and fourteen years of age, took the trip in charge of two teachers. The two teachers testified for defendant that on the return trip

they sat together two or three seats behind the driver on the left side of the bus facing forward and that they saw no accident or any boy struck by the bus. Two of the pupil passengers testified that they were seated in the rear seat of the bus; that they saw three boys run out and hitch upon the back of the bus while in motion; that they were hanging onto a ladder, bobbing up and down and laughing at the girls in the bus; that one boy fell off to the roadway and struck his head. They testified that at the time they thought the boys were fooling and they did not think it was serious. Eight years later at the trial, these girls could not identify plaintiff, then eight years older, as the boy they saw fall off the bus. Without objection, on cross-examination, one of the girls said that when the bus stopped at Tenth avenue the driver took the names and addresses of the passengers.

On the whole record, we think the verdict is clearly against the weight of the credible evidence and that the judgment appealed from should be reversed. The mere happening of an accident is no evidence of negligence. Insufficient evidence, surmise speculation or conjecture is not evidence. (*Matter of Case*, 214 N. Y. 199, 203, 204; *Jaeger* v. *Kelley*, 52 id. 274; *Bond* v. *Smith*, 113 id. 378; *Pauley* v. *Steam Gauge & Lantern Co.*, 131 id. 90.) While the evidence of any negligence on defendant's part is slight, and it is plausibly urged that on plaintiff's own testimony he was guilty of contributory negligence as a matter of law (*Larner* v. *New York Transportation Co.*, 149 App. Div. 193; *Dolfini* v. *Erie R. R. Co.*, 178 N. Y. 1; *Kelley* v. *Schultz, Inc.*, 237 id. 548, revg. 206 App. Div. 696 [1st Dept.]), nevertheless, in view of plaintiff's proximity to the corner at the time he says he looked and saw nothing coming west, we think we may not hold as a matter of law that the infant plaintiff was guilty of contributory negligence or that there was no evidence whatever of negligence on defendant's part. Accordingly, instead of dismissing the complaint, we have determined in an abundance of caution to order a new trial.

This requires comment on errors in the admission of evidence and in the charge. Defendant's counsel objected to the admission of the entire record of the Polyclinic Hospital; he did not object to diagnosis of physical conditions or what the tests showed but specifically objected to those parts of the record which were pure hearsay regarding the happening of the accident. Under the most liberal interpretation of section 374-a of the Civil Practice Act, the admission of the entire record was error. (*People* v. *Kohlmeyer*, 284 N. Y. 366, 370 [Dec. 1940]; *Roberto* v. *Nielson*, 262 App. Div. 1035 [2d Dept. Oct. 1941]; *Cottrell* v. *Prudential Insurance Co.*, 260 id. 986 [Nov. 1940].) The bus driver's alleged con-

versations on the ferry and subsequent visits to New York long after the accident formed no part of the *res gestæ* and were improperly admitted. (*Ingersoll* v. *Liberty Bank of Buffalo,* 278 N. Y. 1; *Golden* v. *Horn & Hardart Co., Inc.,* 244 App. Div. 92; affd., 270 N. Y. 544.) The trial court charged the jury as to subdivision 5-a of section 70 of the Vehicle and Traffic Law, concerning criminal liability for leaving the scene of an accident without reporting. This statute was irrelevant to the issues litigated and the charge was prejudicial to defendant. It was also error to refuse to charge as requested that if the boy walked into the side of the moving bus he could not recover.

The accident occurred June 17, 1933. The summons is dated April 13, 1939. In the record statement under rule 234 of the Rules of Civil Practice, it is established that the summons and complaint were not served until April 24, 1939. Defendant pleaded as a defense that the father's cause of action was barred as not commenced within three years after the cause of action accrued. (Civ. Prac. Act, § 49, subd. 6.) Under section 37-a of the General Construction Law, the father's action for loss of services is to be construed as an action for personal injury. (*Brustein* v. *New Amsterdam Casualty Co.,* 255 N. Y. 137; *Bianco* v. *Sun Oil Co.,* 143 Misc. 764 [CALLAHAN, J.]; affd., 224 App. Div. 817.) The protection afforded the infant by section 60 of the Civil Practice Act does not inure to the parent's cause of action for loss of services and medical expenses, and the father's cause of action not having been instituted within the statutory period is barred (*Pitrelli* v. *Cohen,* 257 App. Div. 845) and accordingly should be dismissed. In addition the infant testified that he did not help at home or run errands, and there was no proof of any special damage on the father's part concerning expenses incurred or paid by him.

Defendant did not plead as a defense that the infant's cause of action asserted by his guardian *ad litem* was barred, and accordingly the issue raised in *Frehe* v. *Schildwachter* (263 App. Div. 379), decided by this court on February 27, 1942, is not here presented and is not considered or passed upon.

The judgment appealed from should be reversed, the father's cause of action dismissed, and a new trial ordered on the cause of action of the infant plaintiff, with costs to appellant to abide the event.

MARTIN, P. J., TOWNLEY, GLENNON and UNTERMYER, JJ., concur.

Judgment unanimously reversed, the cause of action on behalf of plaintiff Theodosios Constantinides dismissed, and a new trial ordered on the cause of action of the infant plaintiff, with costs to the appellant to abide the event.